184    APPELLATE COURTS OF ILLINOIS.

Mason v. Illinois Banker's Life Ass'n of Monmouth, 199 Ill. App. 184.

Sherman Mason, Plaintiff in Error, v. Illinois Banker's Life Association of Monmouth, Illinois, Defendant in Error.

(Not to be reported in full.)

Error to the Circuit Court of Alexander county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 17, 1916.

## Statement of the Case.

Action by Sherman Mason, plaintiff, against Illinois Banker's Life Association of Monmouth, Illinois, defendant, on a life insurance policy. From a judgment for defendant, plaintiff brings error.

Bennett Mason, father of plaintiff, procured an insurance policy in defendant company for $2,000. The policy provided for the payment of assessments and contained a clause of forfeiture in case of failure to pay any assessment. The agent through whom the insurance was procured was D. J. O'Connell of Cairo, who was the defendant's agent at that place. The insured was of the age of forty-nine years, and under the by-laws was required to give guaranty notes for the amount of $24.50, and to pay what they called an admission fee of $24.50. This admission fee belonged to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

O'Connell as the agent. The insured had no money wherewith to pay O'Connell the admission fee and gave him his note therefor for $24.50. The first assessment was made in January, but the insured insisted that O'Connell had told him he would not have to pay the first assessment, and through the instrumentality of O'Connell the first assessment was abated. Between the first assessment made in January and the second one made in April, the insured made several payments to O'Connell in small amounts, ranging from $1 to $6, making a total of $24, the last payment of $6 having been made on the 11th of April, 1908. At about the time the last payment was made the insured received notice of an assessment for $6.13, designated as call No. 42. In a letter later he claimed that the payments made by him to O'Connell were upon his assessments, but O'Connell said they were paid to him upon his note given as admission fee and credited thereon. It was not claimed that there was any payment made of the April assessment except the money paid to O'Connell. Assessments were made by defendant upon policies in July and October and were designated as call No. 43 and No. 44, but no assessment was extended at these dates against this policy. Between the time of payment made to O'Connell in April and the month of October the insured moved to Missouri.

The policy provided that: "Upon the failure of the member to pay the calls levied within the time allowed by the by-laws of this association, * * * such membership shall be forfeited and all rights to any share or interest in the guarantee fund or other property of the association shall cease absolutely at the expiration of the time stipulated in which such payments are required to be made." It was also provided by the by-laws that: "Notice of assessment shall be mailed to each member by the secretary and thirty

days shall be allowed from the date of mailing such notice, during which time such assessment shall be paid.''

The letters of the deceased indicated that he was an illiterate man and the evidence tended to show it was difficult for him to understand the plan of insurance. After he went to Missouri and in October, 1908, he sent a money order to O'Connell for $6.25, which would be the insurance due in October. O'Connell indorsed this money order to defendant and forwarded the same and then wrote the deceased to correspond in the future with the defendant company as he was no longer engaged at work with the company. Then on October 26, 1908, W. A. Sawyer, the secretary of the company, wrote the deceased a letter advising him of the receipt of the $6.25 from O'Connell and also advising him that his insurance lapsed on call No. 42, and that to place him in good standing he would have to forward $12.14 more, together with a health certificate. On November 2, 1908, the deceased wrote the defendant a letter advising it of the receipt of their letter of October 26th., in which he says:

''I see in your letter you have relaps mi policy again, now when did you relaps it and why did you notify me. I can shoe my receipt for 24 dollars for the last year I know it not my fault only this lat payment I never had any instruction your collector call on me and got your money and I thought it was all rite. now mr I think you had out hold me responsible for what your agent does I have paid into the illinois bankers $29.25 dollars and twenty-five cents and I will rite to your collector and see what he has to say about it and I want you to see about it. I never had any instruct to sen it to the home office, now mr have murce on the widow son.''

On November 5th, Mr. Sawyer, the secretary of defendant, replied to this letter and advised him that the money paid to the agent was undoubtedly upon the admission fees, and inclosed a health certificate showing the amount necessary to put his policy in

force and then added: "I am writing to our agent for information regarding the amount of money you claim you paid to him and will notify you what he has to say regarding the matter." On November 15th, the deceased wrote to defendant another letter asking the reason why his money was held back and the policy allowed to lapse, and stating that it was no fault of his, and that if he wanted the policy .to be reinstated he would have to do it, and accused the agent of having set out to beat him, and that he lied to him, etc. There was also offered in evidence a paper marked "Exhibit H. 2," which purported to be a call for assessments Nos. 42, 43 and 44 of $6.13 each, with the credited money order of $6.25, and the balance of $12.14, and advising that this sum must be paid in thirty days, if not the policy will be forfeited. This exhibit had no date and it was not shown when it was received. On November 5, 1908, the defendant company forwarded to the deceased an assessment notice advising him that the amount of $6.13 for call No. 42, $6.13 for call No. 43, and $6.13 for call No. 44, total $18.39, was required to be paid in one month or policy would be forfeited. On November 18th, Mr. Sawyer, secretary of defendant, wrote deceased another letter in which he advised him that he supposed the money paid by him to O'Connell was upon the admission fee, and inclosing a marked folder for him to examine so as to understand the plan of the contract, then he said: "I am again taking. this matter up with D. J. O'Connell to see if I can get you straightened out correctly. I am very sorry that there seems to be an apparent misrepresentation of our plan but I certainly hope we can adjust the matter to the satisfaction of all concerned." This was the end of the correspondence and on November 24th, Bennett Mason, the insured, died.

Instruction No. 28 undertook to define a "waiver," in which it said: A "waiver" consists of a "volun-

tary relinquishment of some known right, benefit or advantage, which the party would otherwise have enjoyed, it being essentially a matter of intent, and which, as in this case, the only proof of that intent rests in what a party does or forbears to do, his act should be so manifestly indicative of an intent to relinquish a then known particular right or benefit that no other reasonable explanation is possible.''

M. J. O'Shea and C. S. Miller, for plaintiff in error.

Miles Frederick Gilbert and Samuel S. Hallam, for defendant in error.

Mr. Justice McBride delivered the opinion of the court.

## Abstract of the Decision.

1. Insurance, § 321*—*when provision in policy for forfeiture for nonpayment of premium may be waived.* The provision in a life insurance policy for the forfeiture of the policy for nonpayment of a premium is for the benefit of the insurer and may be waived by it.

2. Insurance, § 665*—*when evidence sufficient to establish waiver of provision in policy for forfeiture for nonpayment of assessments.* In an action on a life insurance policy, evidence *held* sufficient to show a waiver of the provision in the policy for forfeiture for nonpayment of assessments by an extension of time.

3. Instructions, § 114*—*when instruction directing verdict and ignoring defense improper.* An instruction which directs a verdict and ignores an essential element of the defense is erroneous.

4. Insurance, § 693*—*when instruction ignoring question of waiver vicious and misleading.* In an action on an insurance policy where there is evidence fairly tending to prove a waiver, an instruction given for defendant without containing the element of waiver is vicious and calculated to mislead the jury.

5. Appeal and error, § 1646*—*when error in giving incorrect instruction not cured.* The giving of other correct instructions does

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

not cure an error in giving an instruction ignoring an essential element of the defense and for which there is basis in the evidence.

6. Insurance, § 693*—*when instruction on waiver erroneous.* In an action on an insurance policy where the defense was waiver of forfeiture by extension of time for payment of assessments, a general instruction on what constitutes waiver *held* erroneous as being too narrow, and ignoring the waiver in the particular case.